**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

ASHLEY LEMLER,

Plaintiff,

-vs-

SHOW-ME CHRISTIAN YOUTH HOME,

and

SHOW-ME CHRISTIAN YOUTH HOME FACILITIES, INC.,

Defendants.

## COMPLAINT

Ashley Lemler ("Plaintiff") brings this action against Show-Me Christian Youth Home and Show-Me Christian Youth Home Facilities, Inc. ("Defendants") under 18 U.S.C. § 2255 and related statutes. Because the two entities share a single address, a single registered agent, and a common enterprise, Plaintiff does not yet know which is the proper defendant, or whether both share responsibility for the conduct described below. Plaintiff alleges as follows:

## PARTIES

1. Plaintiff Ashley Lemler is an adult survivor of childhood abuse, forced labor, sexualized mistreatment, and institutional exploitation at Show-Me Christian Youth Home. She was born on October 30, 1994. She was placed at Show-Me as a child and lived there from roughly 2008 until she graduated.

2. The Defendants are two Missouri nonprofit corporations, both in good standing, that operate from the same address under the same registered agent (Chad Puckett, 24302 Mahin Road, La Monte, Missouri 65337):

(a) Show-Me Christian Youth Home, with its principal office at 24302 Mahin Road, La Monte, Missouri 65337-3223; and

(b) Show-Me Christian Youth Home Facilities, Inc., with its principal office at the same address.

3. Together, Defendants operated, owned, controlled, managed, staffed, funded, or benefited from the residential program where Plaintiff was placed as a child. They held Show-Me out to parents, courts, churches, donors, and the public as a safe Christian home for children who needed care, structure, education, discipline, and guidance. And at all relevant times they exercised practical control over the ordinary details of Plaintiff's life — where she lived, when she worked, whether she went to school, what she ate, how she was disciplined, what medication she received, what medical and mental-health care she could reach, and how much contact she had with her family and the world outside the program.

## JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under 18 U.S.C. § 2255. Section 2255 gives a civil remedy to a person who, while a minor, was the victim of certain federal offenses — including forced labor under 18 U.S.C. § 1589 — and who suffered personal injury as a result. This action is timely under § 2255.

5. Venue is proper here because the events giving rise to this action occurred in Missouri, and because Defendants operated, owned, controlled, managed, staffed, funded, or benefited from the facility where Plaintiff was placed, controlled, exploited, and injured.

## FACTUAL ALLEGATIONS

6. Plaintiff was a child when she entered Show-Me. She arrived with no adult judgment, no bargaining power, no money, no transportation, and no realistic way to refuse the conditions the adults imposed on her. Like the other children there, she depended entirely on the adults in charge for the ordinary necessities of life, and those same adults held every lever that mattered to a child: food and shelter, schooling, medical care, discipline, contact with family, and even the account of life inside the program that outsiders were permitted to hear.

7. Defendants presented Show-Me as a Christian residential program for children. The daily reality was something else — a closed world of adult authority and child obedience, run on religious pressure, punishment, isolation, and the institution's

instinct to protect itself.

8. Plaintiff was assigned to the Becker home, where Neil and Kim Becker served as her house parents or adult supervisors. They, and the other adults at Show-Me, held direct authority over her — authority that ran well past ordinary supervision. It was the power to assign her labor, discipline her, control her food and privileges, limit her contact with family, govern her access to medical care, and decide what a child in their custody could say, do, or safely refuse.

9. The children at Show-Me were put to work for the benefit of Defendants and the adults who ran the program, and the work went well beyond the ordinary chores of a family home. Plaintiff and other children cleaned, cooked, maintained the property, and performed punitive physical tasks. Defendants benefited from that labor, because work done by children reduced the need for paid adult workers and helped keep the institution operating.

10. Defendants did not run Show-Me as a family home; they ran it as a revenue-generating enterprise. On information and belief, and as discovery will show, Show-Me earned revenue from sources that included tuition and program fees, payments for the placement and care of the children, state or custodial funds, solicited donations and contributions, and the agricultural and farm products produced on its property. The unpaid labor of Plaintiff and the other children furthered that enterprise. It maintained the homes, grounds, vehicles, and property, kept the farm and agricultural operations running, and spared Defendants the wages of the paid workers they would otherwise have had to employ. The labor was extracted for Defendants' financial benefit and the operation of their business, not as the ordinary contribution of a child to a household.

11. Plaintiff was not paid a fair wage for any of it. And, more to the point, she could not meaningfully refuse it. A child living under Defendants' control could not negotiate her terms, safely turn down excessive or humiliating work, or simply leave when she had had enough.

12. The harm Defendants used and threatened to compel Plaintiff's labor was serious harm within the meaning of 18 U.S.C. § 1589(c)(2), which reaches any harm — physical or nonphysical, including psychological harm — serious enough, under all the surrounding circumstances, to compel a reasonable person in Plaintiff's position to perform or continue performing labor in order to avoid it. The harms Defendants imposed and threatened included psychological harm and fear, near-total isolation from her family, the denial of medical care, the loss of food, hygiene, and

privileges, and the constant and coercive monitoring of her body and conduct. For a child confined in a closed residential institution, dependent on Defendants for every necessity, and cut off from outside help, each of those harms was serious enough to compel her to perform the labor Defendants demanded.

13. The labor was enforced through fear. Defendants and their staff secured Plaintiff's obedience through discipline, humiliation, the loss of privileges, isolation, religious pressure, and the ordinary terror a child feels when every meaningful part of her life rests with the adults demanding the work. A child in her position understood that refusal would bring punishment or worse.

14. The coercion was not only physical. The adults in charge used religious authority to tighten their control, teaching the children that obedience carried spiritual weight and that disobedience was not mere misbehavior but rebellion or moral failure. For a child placed in a closed Christian institution, being told that submission to the adults was a spiritual duty made their control nearly complete — and made both resistance and disclosure that much harder.

15. While in Defendants' custody, Plaintiff was subjected to harsh punishment, humiliation, and abuse. She was made to perform punitive running and labor, pulled by her hair, and beaten while she was nude. And she endured repeated sexualized mistreatment — intrusions into the bathroom, monitoring in the shower, and groping. All of this happened to a minor, in a setting where adults controlled the ordinary details of her life and where the institution's structure made escape or meaningful refusal unrealistic.

16. Defendants knew or should have known that the children in their care were being harmed. What Plaintiff describes cannot fairly be blamed on a single employee acting on his own — the mistreatment was woven into the way the institution ran, and into its instinct to protect itself rather than the children in its charge.

17. When Plaintiff reported abuse or tried to resist mistreatment, Defendants did nothing meaningful to protect her. She met retaliation, disbelief, pressure, and institutional indifference instead.

18. Defendants also failed Plaintiff educationally. Her education was subordinated to the demands of the program — to work, punishment, discipline, and the institution's insistence on obedience — and she left Show-Me without the foundation those years should have given her. That loss was not merely academic; it shadowed her confidence, her independence, and her ability to step into adult life on equal footing with

peers who had received a normal education.

19. Defendants also failed to provide reasonable medical care. Plaintiff suffered menstrual and reproductive-health problems, including symptoms associated with PCOS, that the adults responsible for her never reasonably addressed. A residential program that takes custody of a child owes that child a reasonable response to her medical needs, and Defendants did not meet that obligation.

20. Plaintiff's injuries did not end when she left Show-Me. The harm followed her into adulthood, reaching her trust, her sense of safety, her relationships, her faith, her education, and her emotional health. She has lived with trauma symptoms, anxiety, shame, and emotional distress, with the loss of trust and of the ordinary safety of childhood, and with lasting educational and medical harm.

21. Some of these injuries were apparent at the time. Others came into focus only later, once Plaintiff had the distance, maturity, and life experience to understand what had been done to her.

22. What happened to Plaintiff was not one bad decision, one misunderstanding, or one isolated lapse in judgment. It was a system — one that took vulnerable children, isolated them, controlled them, extracted their labor, punished them, silenced them, and left them to carry the damage into adulthood.

23. Separate from their direct conduct, Defendants are liable as beneficiaries under 18 U.S.C. § 1589(b). Defendants knowingly benefited, financially and by receiving things of value, from their participation in a venture — the operation of Show-Me — that obtained the labor and services of Plaintiff and other children by the coercive means described above. Defendants knew, or acted in reckless disregard of the fact, that the venture obtained that labor through force, coercion, serious harm, and a scheme that led the children to believe that refusal would bring serious harm. A violation of § 1589(b) is itself a violation of § 1589, and Plaintiff may recover for it under 18 U.S.C. § 2255.

24. Defendants are also vicariously liable for the conduct described in this Complaint. The staff, house parents, and other adults who controlled Plaintiff, compelled her labor, punished her, and subjected her to the treatment described above acted as Defendants' employees or agents and within the scope and course of that employment or agency. Defendants are responsible for their acts and omissions under the doctrine of *respondeat superior*.

## CLAIMS FOR RELIEF

### COUNT I
### CIVIL REMEDY FOR PERSONAL INJURY TO A MINOR
### 18 U.S.C. § 2255
### Predicate Violation: Forced Labor Under 18 U.S.C. § 1589

25. Plaintiff adopts the preceding paragraphs.

26. Plaintiff was a minor throughout the conduct described in this Complaint. Federal law forbids knowingly obtaining a person's labor or services by force or threats of force, by physical restraint or threats of physical restraint, by serious harm or threats of serious harm, by abuse of law or legal process, or by any scheme, plan, or pattern meant to make a person believe that refusing to work would result in serious harm. 18 U.S.C. § 1589.

27. Defendants obtained Plaintiff's labor and services while she was a minor. That labor included cleaning, cooking, maintaining the property, punitive physical work, and other tasks that helped Show-Me operate.

28. Defendants obtained that labor through coercion — through punishment, institutional control, religious pressure, isolation, humiliation, threats of consequence, and the simple inability of a child in a closed residential facility to refuse. Plaintiff reasonably believed that refusing to work would bring serious consequences: punishment, humiliation, isolation, the loss of privileges, tighter control, and other harms that are serious to a child in institutional custody.

29. Defendants knew or should have known that Plaintiff's labor was being obtained through these coercive means, and they benefited from it financially and operationally, because the work of Plaintiff and other children reduced the need for paid adult labor and helped keep the institution running.

30. Plaintiff was therefore a victim of forced labor under 18 U.S.C. § 1589, and she suffered personal injury as a result. Under 18 U.S.C. § 2255, she is entitled to recover the damages the law allows, together with the costs of this action and reasonable attorney's fees.

## COUNT II
## CIVIL REMEDY FOR PERSONAL INJURY TO A MINOR
## 18 U.S.C. § 2255
## Predicate Violation: Sexual Exploitation and Abuse Under Federal Law

31. Plaintiff adopts the preceding paragraphs.

32. Plaintiff was a minor throughout the sexualized mistreatment and institutional retaliation described in this Complaint. The adults who controlled Plaintiff's daily life at Show-Me, including those responsible for the Becker home where she was placed, used that authority to subject her to sexualized mistreatment while she was a child in Defendants' residential program. The mistreatment included forced nudity, beatings administered while she was nude, intrusions into the bathroom, monitoring while she showered, and groping. It occurred in a custodial setting where Plaintiff could not realistically leave, refuse, or seek outside help.

33. Defendants knew or should have known that Plaintiff was being sexually mistreated and exploited. When she reported abuse or tried to resist, Defendants took no reasonable protective action. Instead, Plaintiff met retaliation, disbelief, pressure, and institutional indifference — while Defendants continued to benefit from the residential program in which she was controlled, exploited, and harmed.

34. Plaintiff suffered personal injury as a result of the sexualized mistreatment, exploitation, institutional indifference, and retaliation described in this Complaint. Under 18 U.S.C. § 2255, she is entitled to recover the damages the law allows, together with the costs of this action and reasonable attorney's fees.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff Ashley Lemler asks the Court to enter judgment against Defendants, jointly and severally, for actual damages; liquidated or statutory damages where the law allows; reasonable attorney's fees; costs; pre-judgment and post-judgment interest; and all other relief the Court finds just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Respectfully submitted,

**McGONAGLE JOHNSON, LLC**
301 NE Mulberry Street–Suite 204
Lee's Summit, Missouri 64086
816-221-2222

By: ______________________________
**Jarrett Johnson, Missouri Bar No. 42481**
jj@mcgonaglejohnson.com

Attorney for Plaintiff Ashley Lemler